Stewart E. MILLARD, Administrator of the Estate of Stephen Dudash, Deceased

v.

MUNICIPAL SEWER AUTHORITY OF the TOWNSHIP OF LOWER MAKE-FIELD and Gannett, Fleming, Cordrry, and Carpenter, Inc., Defendants,

v.

GEORGE TRIPP, INC., Third-Party Defendant.

Civ. A. No. 40508.

United States District Court, E. D. Pennsylvania.

July 20, 1970.

**1316**

Meyer A. Bushman, Winokur & Kahn, Philadelphia, Pa., for plaintiff.

Albert J. Schell, Jr., Post & Schell, Philadelphia Pa., for defendant Gannett, Fleming, Cordrry and Carpenter, Inc.

Richard J. van Roden, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant Municipal Sewer Authority and third party defendant George Tripp, Inc.

## OPINION AND ORDER

WOOD, District Judge.

This is a motion for a new trial in a case involving fatal injuries to plaintiff's decedent, Stephen Dudash, when he was accidentally struck by the bucket of a backhoe owned by the third-party defendant, George Tripp, Inc., while working on a trench in the course of installation of a sewer line. After trial, a jury found that the negligence of the third-party defendant, George Tripp, Inc., and its agents, was a proximate cause of the unfortunate accident, but that the defendants, Lower Makefield Township Sewer Authority and Gannett, Fleming, Cordrry, and Carpenter, Inc. (an engineering firm employed by the township to assure compliance with specifications), were not negligent in the performance of their duties with respect to the accident. After a full review of the record we have concluded that the plaintiff's motion must be denied.

On August 10, 1965, plaintiff's decedent, Stephen Dudash, an employee of George Tripp, Inc., was working in a trench in front of No. 7 Beechwood Lane, Yardley, Pennsylvania, buttressing sewer pipes which had been laid in the trench. Edward Stemmer, the operator of the backhoe which had dug the trench, testified that he had completed work for the day, parked the bucket of the backhoe approximately four feet from the edge of the trench, fixed the brakes, and retired for the evening. There was also testimony that sometime later, at approximately 4:30 P.M., an oiler employed by the third-party defendant (Tripp) was installing glass in the cabin of the backhoe and accidently released the brakes, causing the boom to fall and thereby causing the boom and bucket of the backhoe to fall into the trench and strike plaintiff's decedent.

The primary contention of the plaintiff at trial was that the defendant engineer, acting as agent of the township was negligent in allowing the bucket to be stored in an allegedly dangerous posi-

tion at the edge of the trench. After hearing the evidence and in view of the decisions of our Circuit Court in Spinozzi, etc. v. E. J. Lavino, et al., 243 F.2d 80 (3rd Cir. 1957); Quinones v. Township of Upper Moreland, et al., 293 F.2d 237 (3rd Cir. 1961) and Jamison v. A. M. Byers Co., 330 F.2d 657 (3rd Cir. 1964) we ruled that under contract and taking into consideration the totality of the circumstances, the engineers (acting as agents of the township) had the *right to control* the work that was done on this job, and that if they were negligent in exercising such control and that negligence was the proximate cause of the accident, then the engineer and the township would be liable to the plaintiff. Under the circumstances, we thought that this ruling was extremely generous to the plaintiff.[1] However, in response to our interrogatory, the jury found that neither the Township nor the Sewer Authority was negligent in the exercise of their right of control.

■ We shall consider the plaintiff's points *seriatim* in the order raised in his post trial brief (Document 44). Plaintiff first contends that we erred in refusing to allow him to read to the jury and charge on the following provisions of the Pennsylvania Health and Safety Law, 43 P.S. § 25–2:

"(c) All cranes, hoists, steam or electric shovels, plant railroads, and other apparatus or devices used for moving, lifting, lowering, and transporting material shall be designed, constructed, equipped, and operated as to eliminate dangerous conditions.

"(f) All pits, quarries, mines other than coal mines, trenches, excavations, and similar operations shall be properly shored, braced, and otherwise guarded, operated, and conducted as to provide reasonable and adequate protection to workers employed therein."

To the contrary, with respect to Section (c), at the time of the accident, work for the day was over, the backhoe was parked, and even the plaintiff's own witnesses conceded that the backhoe was not being "operated".[2] With respect to Section (f), even plaintiff's counsel conceded[3] that "shoring" was not involved in this case; and we concluded that there was no issue presented by the evidence as to whether the trench[4] in question was properly "shored, braced, and otherwise guarded." In sum, we think that neither of these provisions was applicable in the circumstances of this case.

In any event, under Pennsylvania law, Section 25–2 is not self-executing and Section 12 of the Safety Law requires that in order to put the Act into effect, the Department of Labor and Industry must promulgate rules and regulations specifically applicable to the conditions at issue. Since such applicable regulations were not presented, it would have been improper for us to allow the general provisions of Section 25–2 into the case. Matulonis v. Reading Railroad, 421 Pa. 230, 219 A.2d 301 (1966). Plaintiff, however, suggests that we never allowed him to reach the point of introducing applicable regulations. This is simply inaccurate. The admission of these statutes was discussed at length on

1. There was considerable evidence that under the contract and as a matter of course of practice of the parties, matters of safety in the operation of the third-party defendant's equipment (including the backhoe) were the responsibility of, and under the control of Tripp, Inc., and that any advice given by the defendants (Township and Sewer Authority) to Tripp relating to safety was strictly gratuitous, for humanitarian motives, and not compelled by any contractual duty. See, e. g., N.T. pp. 100, 104–5, 124, 129, 133–7, 157.

2. See, e. g., N.T. pp. 90, 294.

3. See N.T. p. 283.

4. If indeed such a "trench" was intended to be covered by the statute.

several occasions.[5] The plaintiff was given every opportunity to introduce, and in fact did introduce several other allegedly applicable regulations not promulgated by the Department of Labor and Industry pursuant to Section 25–2;[6] *and at no time*, during trial, in his brief in support of his motion for a new trial, or at argument, has the plaintiff supplied us with any rule or regulation promulgated by the Department of Labor and Industry pursuant to Section 25–2 applicable to the facts of this case.

■ The plaintiff secondly contends that we erred in failing to charge on his proposed point No. 5 which stated that:

"Under the law where an owner has retained some element of control of the job, he should be responsible for harmful consequences of its performance as a concomitant of the control which he has retained. If the owner retains control of some part of the work and fails to exercise that control with reasonable care as a result of which harm is caused to another, he shall be responsible. In other words, if the Municipal Sewer Authority of the Township of Lower Makefield retained control over some part of the work, acting through its agent, Gannett, Fleming, Cordrry & Carpenter, and failed to exercise that control with reasonable care, as a result of which Stephen Dudash was injured, the Sewer Authority is responsible: Spinozzi, etc., v. E. J. Lavino and Company, et al, 243 F.2d 80 (3rd Cir. 1957); Quinones v. Township of Upper Moreland, et al, 293 F.2d 237 (3rd Cir. 1961); Jamison v. A. M. Byers Company, 330 F.2d 657 (3rd Cir. 1964)."

To the contrary, we charged the jury at length substantially in this respect to the extent that such language was consistent with the facts of this case. (N. T. pp. 403–11) *Spinozzi, Quinones*, and *Jamison* of course were not relevant in the respect that they involved alleged negligence *per se* in the failure to obey specific regulations of the Department of Labor and Industry in failing to properly shore excavations. Plaintiff's objections to our failure to charge on his points numbers 6, 7, and 14 must also fall for the same reasons as his objection on point No. 5.

■ The plaintiff next urges that we erred in a number of respects on our "charge on the issue of proximate cause and in refusing to charge the jury on the issue of concurrent negligence" (plaintiff's post trial brief, p. 16) Although we have reviewed our charge in this respect and find it entirely proper, the short answer to this point is that any error was harmless because the jury found in response to our specific interrogatory that neither the engineers nor the township was negligent, and it was therefore not necessary to reach the causation issue.

■ The plaintiff further urges that we "erred in (our) refusal to permit plaintiff's counsel to indicate to the jury that the plaintiff had no right of recovery against the third-party defendant and in (our) refusal to indicate the relationship of the third-party defendant to all other defendants." (plaintiff's post trial brief, page 21). Plaintiff's counsel has not suggested any constructive purpose to be served by such a charge. The only function of such a charge would

---

5. See, e. g., N.T. pp. 278–286, 388–390. In fact at p. 282, the plaintiff's counsel rested his case purely on the statute and rejected the suggestion that regulations of the Department of Labor and Industry might be involved in the following colloquy:

"(defendant's counsel): Your Honor, I think this statute has to do with excavation and the rules and regulations

promulgated by the Department of Labor and Industry.

"Does it not?

"(plaintiff's counsel): No, it does not. It is a statute of the Commonwealth of Pennsylvania. It is a statute, pure and simple, which says * * *"

6. See, e. g., N.T. pp. 285–302, 335–351, 361.

have been to unfairly suggest to the jury that they should find against the engineers and the township because the plaintiff was by law limited in his recovery against the third-party defendant; these considerations had absolutely no relation to the issue of whether or not the township and the engineers were negligent in the exercise of their right of control.

The plaintiff's final contention is that after fully charging the jury that the engineers and their principal the township had as a matter of law the right to control the work that was done on this job, we erred because we allegedly "negated the prior charge on right of control" by reading one of the defendants' points which stated that:

> "The contract between the Sewer Authority and Tripp places the responsibility with respect to operation and control of the backhoe on Tripp. You will recall that the uncontradicted evidence was that the backhoe belonged to Tripp, the contractor; that Mr. Stemmer was their employee, as I have said before, and Mr. Engel was their employee, and, as a matter of fact, Mr. Dudash was their employee." (N.T. p. 423)

■■ Plaintiff is barred from raising this objection now because he failed to make timely objection before the jury retired as is required by Rule 51. Moreover, at this juncture we were merely calling the attention of the jury to the fact that under the contract (as the plaintiff concedes), Tripp (the contractor) and his employees, were given immediate responsibility for operation of the backhoe; this did not contradict our lengthy charge to the effect that as a matter of law the engineer acting for the township had the right to control all aspects of the job. (N.T. pp. 406–10) In our opinion, the charge as a whole was entirely fair, if not favorable to the plaintiff.

Having considered and found each of plaintiff's grounds for a new trial wanting in merit, the motion will be denied.